IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL JONES, #420162   *

Plaintiff,        *

    v.       *  Civil Action No. CCB-14-2391

DR. AVA JOUBERT    *
JANETTE CLARKE, NP
          *
Defendants.

          *****

## <u>MEMORANDUM</u>

On July 24, 2014, plaintiff Michael Jones ("Jones"), a self-represented inmate incarcerated at the North Branch Correctional Institution ("NBCI"), filed a civil rights action pursuant to 42 U.S.C. § 1983, seeking compensatory and punitive damages and other miscellaneous relief. (ECF No. 1). He complains that he sustained injuries to his hip, knee, and ankle when confined in an Ohio prison in October of 2013. Jones claims his leg was "badly" broken, and because he did not receive treatment while confined in Ohio, the limb healed poorly. He asserts that although he brought his injuries to the attention of health care staff at NBCI, they failed to take appropriate steps to treat his pain, which he claims is so intense he can "barely walk" on his left leg and has difficulty sleeping. Jones alleges that the Ibuprofen he has been prescribed is not alleviating his chronic pain and that medical staff refuse to prescribe him effective medication to reduce his pain. (*Id*.). He maintains that he informed defendants about his condition in person and through sick-call slips.

On August 31, 2015, defendants' motion to dismiss was granted in part and denied in part. (ECF Nos. 18 & 19). The complaint against defendant Wexford Health Sources, Inc. was dismissed, while the motion to dismiss filed by the remaining defendants was denied. (*Id*.). Jones

was later permitted to amend his complaint to claim that he brought his injuries to the attention of Nurse Practitioner ("NP") Janette Clarke ("Clarke") and physician Ava Joubert. (ECF Nos. 23 & 27). He alleged that Clarke denied his request to be seen by a specialist and continued him on Ibuprofen. Jones asserted that he had repeatedly informed defendants that the Ibuprofen is not effective in reducing his chronic pain, but they refused to prescribe him an effective pain-reducing medication. (ECF No. 23). As a result of the amended complaint, the cause of action was dismissed as to defendants Kristi Cortez, Dawn Hawk, James Hunt, and Bill Beeman. The amended allegations against the remaining defendants, Dr. Joubert and NP Clarke, proceeded for a response. (ECF No. 27).

Defendants Joubert and Clarke filed a motion to seal (ECF No. 44) accompanied by a motion for summary judgment (ECF No. 44-1), which consisted of a statement of material facts not in dispute (ECF 44-2)[1] and a number of exhibits. Defendants also filed a wholly separate motion for summary judgment (ECF No. 45), accompanied by the identical statement of material facts not in dispute and supporting memorandum. (ECF Nos. 45-1 & 45-4). Jones filed an opposition response. (ECF No. 47).

The matter is ready for disposition, and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2016). For reasons that follow, defendants Joubert and Clarke's motion for summary judgment (ECF No. 45) will be GRANTED.

## I. Standard of Review

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court

---

[1] All exhibits are referenced by their electronic filing number.

has clarified that this does not mean that any factual dispute will defeat the motion. By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "construe the evidence in the light most favorable to the non-moving party . . . and draw all reasonable inferences in his favor." *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006). Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247–48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *accord Libertarian Party of Va. v. Judd*, 718 F.3d

3

308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.  And "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because Jones is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious.[2] *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (concluding there is no expectation that prisoners will be

---

[2]     A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citing *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)).

provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998)). Inmates do not have a constitutional right to the treatment of their choice, *see Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity or extent of medical treatment do not necessarily rise to a constitutional injury, *see Estelle*, 429 U.S. at 105–06; *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Fleming v. LeFevere*, 423 F. Supp. 2d 1064, 1070–71 (C.D. Cal. 2006).

## II. Discussion

### Defendants' Motion to Seal

Defendants have filed a motion to seal, seeking to have their summary judgment motion and exhibits placed under seal due to the sensitive and private medical information furnished in the documents. (ECF No. 44). Local Rule 105.11 governs the sealing of all documents filed in

the record and states in relevant part that "[a]ny motion seeking the sealing of pleadings, motions, exhibits, or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule 105.11 (D. Md. 2016). The rule balances the public's general right to inspect and copy judicial records and documents, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access can only be rebutted by showing that "countervailing interests heavily outweigh the public interests in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). The right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id*. at 266 (quoting *In re Wash. Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011). In this case, in light of the sensitive personal medical information contained in the records at issue, the motion to seal will be granted.

### Defendants' Motion for Summary Judgment

Defendants argue that upon his arrival in a Maryland state correctional facility in November of 2013, Jones's transferred medical chart did not reference any prior hip, knee, or ankle complaints, but only mentioned Jones's right hand and wrist. (ECF No. 44-2, 2). His intake appointment revealed that he had no bone/joint pain or swelling. On November 27, 2013, and

throughout December of 2013, Jones presented complaints of right wrist pain. (ECF No. 44-3, 1–17).

Defendants affirm that on or about February 2, 2014, Jones first complained of difficulties with his left knee and hip, which he alleged had commenced in 2010 after he was beaten with a nightstick. Defendants maintain that a subsequent examination revealed no swelling, deformity, leg shortening, or limp to gait. Jones was found to have a full range of motion ("ROM") and was advised to continue taking Naproxen and Tylenol. (ECF No. 44-3, 18–19; ECF No. 44-5, 55–56). Three days later, Jones returned to the medical department with similar complaints about his left hip and knee pain. He was observed to ambulate without assistance, and his gait and ROM were found to be within normal limits. He claimed that he was hit with a metal nightstick in the past and dislocated "something."  He contended that he needed Ultram because the Naproxen and Tylenol did not work. His right middle finger was found to be swollen. Keflex, an antibiotic, was ordered, as well as muscle rub for Jones's hip and knee. He was educated about cold and hot compresses. Defendants state that Jones acknowledged performing "strenuous exercises," and he was cautioned against exercising to afford his muscles time to heal. He subsequently received multiple prescriptions for Keflex, Naproxen, Tylenol, and a topical muscle ointment. (ECF No. 44-3, 20–22).

On February 7, 2014, Jones complained of a swollen right middle finger, left knee discomfort, and left hip discomfort. His gait appeared within normal limits and he had a full ROM in his extremities. Jones was encouraged to continue his current plan of care. (ECF No. 44-3, 23–24; ECF No. 44-5, 58).

On February 10, 2014, Jones completed a sick-call slip in which he complained of chronic pain to his left hip and leg. On February 13, 2014, he was referred to a provider. Defendants maintain that Jones was seen by a nurse practitioner the following day for his chief

complaint of pain. A physical examination observed that Jones was in no distress, he ambulated without a limp, he had normal musculature, and he had no skeletal tenderness, joint deformity, effusion, erythema, or pain on palpation. Jones's Naproxen prescription was increased to 500 mg. and warm compresses were ordered. (ECF No. 44-3, 25–28; ECF No. 44-5, 59). On February 21, 2014, Jones appeared at the medical clinic with a sole complaint of constipation. (ECF No. 44-3, 30–31).

On March 11, 2014, Jones returned to the medical department reporting he had ingested batteries. It was noted during this visit that a review of Jones's musculoskeletal system revealed no bone/joint pain, swelling, or weakness. (ECF No. 44-3, 32–38). After his return from the local hospital, Jones was held in the prison infirmary and Special Observation Housing (SOH) for monitoring and suicide precautions. (ECF No. 44-3, 39–43, 45–67).

On April 24, 2014, Jones filed a sick-call request after his return to NBCI. He complained of pain to his left knee and hip. Jones was seen by healthcare staff on April 28, 2014, at which time he reported a leg, hip, and knee fracture in 2010 and a recent left lower leg fracture. He was referred to a provider for further examination and was prescribed heat applications. (ECF No. 44-3, 69–70; ECF No. 44-5, 65). On April 30, 2014, Dr. Joubert performed an examination on Jones and found him to be negative for weakness but positive for back pain, bone and joint symptoms, and myalgia. Joubert further diagnosed Jones with "chronic pain syndrome" and continued him on Motrin.  (ECF No. 44-3, 71; ECF No. 44-4, 1–2).

Jones next complained of renewed leg and knee pain in a sick-call request on June 27, 2014, with an onset date two months prior. He denied previous episodes of pain. Three days later he saw healthcare staff and was assessed as having a left leg sprain/strain. He was continued on Motrin and moist heat. (ECF No. 44-4, 6–7; ECF No. 44-5, 68–69).

Jones returned to the medical department later in July of 2014 for claims of a bone sticking out of his left knee as well as left hip and knee pain. His examinations were objectively normal; no swelling, bruises or malformation was observed. Jones was able to ambulate and move onto the medical table normally. He had a full ROM and was found to be in no distress. He was advised to continue on his medication, and ice and cool compresses were prescribed. (ECF No. 44-4, 8–13; ECF No. 44-5, 70–71; ECF No. 44-6, 1).

According to defendants, Jones next complained of left knee and hip pain on August 17, 2014. When seen by medical staff the next day, his gait was found to be normal, and he was in no visible distress. On August 20, 2014, Jones complained of "pain." No objective findings regarding Jones's left leg were made. No spasms, discoloration, tingling/numbness, or swelling were noted. Jones's gait and ROM were within normal limits and he was able to transfer to an examination table without difficulty. He was referred to a medical provider. Throughout August of 2014, Jones filed sick-call requests seeking x-rays, a knee and ankle brace, a cane, and Tylenol #3, as well as tier, bottom-bunk, and bottom-range restrictions. Defendant Clarke diagnosed Jones with a non-specific "Disorder, synovium/tendon/bursa"[3] and prescribed him Ibuprofen 400 mg. for ninety days, ice for his left foot, and a stretching and strengthening routine. (ECF No. 44-4, 30–33; ECF No. 45-6, 7, 9, 11).

Defendants maintain that Jones next complained of pain to his extremities on October 2, 2014. Two days later, he was examined. His ROM and gait were found to be within normal limits and an examination found no objective evidence of any issues with his left leg. He was nonetheless referred to a provider for further evaluation. (ECF No. 44-4, 41–43; ECF No. 44-6, 13). On October 7, 2014, Clarke again examined and treated Jones. Jones acknowledged he was

---

[3]   A synovial bursa is a sac containing synovial fluid that occurs at the sites of friction between a tendon and a bone over which it plays, or subcutaneously over a bony prominence. *See* www.http://medical-dictionary.thefreedictionary.com/synovial+bursa.

able to climb and go down stairs, exercise, kneel, put on his shoes and socks, walk, and perform the activities of daily living ("ADLs"). His Ibuprofen was continued. (ECF No. 44-4, 44–45). On October 22, 2014, Jones returned to the medical department with complaints of left foot, ankle, knee, and hip pain. He requested Ultram or Tylenol #3.[4] He was found in no acute distress, with a full ROM, and was able to get on and off the examination table several times. The treatment plan of Ibuprofen and cold compresses was retained. (*Id.* 46–48).

On December 13, 2014, Jones was seen again for his complaints of knee pain. He was urged to continue using the Ibuprofen, elevate his left leg, and use warm compresses. (ECF No. 44-4, 49–51; ECF No. 44-6, 17). On January 14, 2015, Jones returned to the medical department complaining of knee, ankle, and hip pain. He was referred to a medical provider and seen on January 19, 2015, at which time a knee sleeve was ordered, along with an anti-arthritis medication (Mobic). Jones was also referred to an outside provider for left knee injection therapy. (ECF No. 44-4, 52–56; ECF No. 44-6, 18). He was fitted for a left knee sleeve on February 8, 2015. (ECF No. 44-4, 61).

On March 27, 2015, Jones was seen for his complaints of edema in both his legs. He was prescribed, *inter alia*, Motrin and Minipress, a hypertension medication. (ECF No. 44-4, 70–71; ECF No. 44-6, 25).

On or about August 26, 2015, Jones complained of extreme pain in his left ankle and side of the foot. When seen by medical staff on August 28, 2015, he was found to walk with a steady gait and was able to transfer without difficulty. Jones was referred to a medical provider. On September 3, 2015, he was seen in the medical department for his complaint of left ankle pain. The physician on duty, Dr. Ashraf, ordered an x-ray of the left ankle to rule out a fracture. The

---

[4] Tylenol #3 is considered an opiate, while Ultram is a narcotic-like pain reliever. *See* www.https://www.drugs.com/mtm/tylenol-with-codeine-3.html; www.drugs.com/ultram.html.

x-ray showed no fracture, dislocation, or subluxation. (ECF No. 44-5, 37–43; ECF No. 44-6, 39). Jones was again seen by healthcare staff on September 9 & 14, 2015, for his complaints of hip, leg and knee pain. His gait was found to be slow but steady, and he had no difficulty getting off and on the examination table.  A request was to be made for Jones to have a bottom tier/bottom bunk for three months while his records were being reviewed. (ECF No. 44-5, 44–50; ECF No. 44-6, 40). Defendants maintain that they continue to provide Jones with ongoing medical treatment for his hip, knee, ankle, and foot pain.

In his opposition, Jones maintains that he has clearly raised an Eighth Amendment claim that is not foreclosed merely because he was afforded some treatment. He accuses defendants' counsel of making false statements regarding when he was transferred to Maryland from Ohio, whether he was treated at NBCI or the Western Correction Institution in Cumberland, Maryland, and what recreational activities he was involved in. (ECF No. 47).

Upon review of the extensive record submitted, the court finds no Eighth Amendment violation. The record reveals that Jones filed numerous sick-call slips regarding, *inter alia*, asthma attacks, constipation, and pain in his wrist and hand. (*See* ECF No. 44-5). He was examined and treated for all of these problems. Jones also filed sick-call slips complaining of left hip, knee and ankle pain. He was repeatedly examined by nurses, physician's assistants, and doctors.  Although healthcare staff found no objective medical problems, Jones was nonetheless prescribed Mobic and Keflex, given an external medical device to reduce the subjective pain in his knee, and provided an x-ray of his ankle. Jones's requests for Ultram and Tylenol #3 were declined, but he was provided NSAIDS and other pain analgesics, including Naproxen and Motrin. His assessments were consistently unremarkable, his gait was found to be normal, he was able to ambulate, he had a full ROM, his ability to engage in ADLs was unrestricted, and he

was observed to be capable of moving onto, and down from, the examination table without difficulty.

An Eighth Amendment violation cannot be made given the record presented in this case. Summary judgment will be entered in favor of defendants Joubert and Clarke in a separate Order to follow.

Date: _____3/8/17_____                    _____/s/_____
                                          Catherine C. Blake
                                          United States District Judge